IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JIMMY CARSON,

Plaintiff, No. 2:11-cv-0632 KJN

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

Defendant. ORDER

______________________________/

Plaintiff, who is represented by counsel, seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying plaintiff's application for Supplemental Security Income benefits under Title XVI of the Social Security Act ("Act").[1] In his motion for summary judgment, plaintiff contends that the administrative law judge ("ALJ") in this case erred by: (1) rejecting the treating opinions of Drs. Leon and Khambati without providing "specific and legitimate reasons" for so doing; (2) rejecting plaintiff's testimony regarding his pain and functional limitations on factually inaccurate and illegitimate bases; and (3) failing to credit the testimony of the vocational expert ("VE") in response to

[1] This case was referred to the undersigned pursuant to Eastern District of California Local Rule 302(c)(15) and 28 U.S.C. § 636(c), and both parties voluntarily consented (Dkt. Nos. 7, 10) to proceed before a United States Magistrate Judge. 28 U.S.C. § 636(c)(1); Fed. R. Civ. P. 73; E. Dist. Local Rule 301.

hypothetical questions that reflected the functional limitations provided by Drs. Leon and Khambati. (See generally Pl.'s Mot. for Summ. J., Dkt. No. 20 at 1.) Defendant filed an opposition to plaintiff's motion and a cross-motion for summary judgment. (Def.'s Opp'n & Cross-Motion for Summ. J., Dkt. No. 21.) Plaintiff did not file a reply memorandum. For the reasons stated below, the court grants plaintiff's motion for summary judgment and denies the Commissioner's cross-motion for summary judgment; this case will be remanded to the ALJ for further proceedings.

## I. BACKGROUND

### A. Factual Background[2]

In 1998, plaintiff suffered complications from a 1996 gastric bypass surgery, which required a surgical repair and revision. (AT 459.) In 2001, plaintiff suffered at least two broken bones in his thoracic spine and reported suffering severe pain in his pelvis, neck, rib cage and spine. (AT 458). In 2002, plaintiff was diagnosed with emphysematous lungs, severe osteoporosis in his thoracic spine and slight osteoporosis in his cervical spine. (AT 469.) In 2003, plaintiff suffered another compression fracture to his thoracic spine and mild degenerative changes to his lumbosacral spine. (AT 475.)

An apt description of plaintiff's history prior to his application for disability benefits was given in May 2006 by Dr. Medhi, who saw plaintiff regarding a large thyroid mass:

> [Plaintiff is] a very unfortunate, 46 year old gentleman with a complicated medical history, having undergone gastric bypass, he has severe osteoporosis possibly secondary to the weight loss as he initially weighed over 600 pounds. He has a history of hypertension, obesity, gastric bleeding, gastric ulcer, spinal meningitis, CVA and seizure disorder. He now presents with a large, complex cystic mass in the right lobe of the thyroid.

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the undersigned does not exhaustively relate those facts here. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

(AT 343.) Plaintiff continued to suffer bone, digestive, seizure, and other ailments from 2006 through 2009.

B. Procedural History

On March 23, 2006, plaintiff filed a protective application for Supplemental Security Income, which alleged a disability onset date of January 1, 2003. (Admin. Transcript ("AT") 108.) Plaintiff's application was denied initially and on reconsideration (AT 70-74, 76-81.) Plaintiff requested a hearing before an ALJ, and the ALJ conducted a hearing regarding plaintiff's claim on January 8, 2009. (AT 17-59.) Plaintiff was represented by counsel at the hearing and testified. A vocational expert also testified at the hearing.

In a written decision dated June 10, 2009, the ALJ denied plaintiff's application for benefits based on a finding that plaintiff was capable of performing his past relevant work as a mobile home manager and the representative jobs in the national economy of cashier, dispatcher, and order clerk.[3] (AT 7-16.) The ALJ's decision became the final decision of the

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 et seq. Generally speaking, Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Under both benefit schemes, the term "disability" is defined, in part, as an "inability to engage in any substantial gainful activity" due to "any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-1576, 416.920, 416.971-976; see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The Ninth Circuit Court of Appeals has summarized the sequential evaluation as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Commissioner when the Appeals Council denied plaintiff's request for review. (AT 1-4.) Plaintiff subsequently filed this action.

C. Summary of the ALJ's Findings

The ALJ conducted the required five-step evaluation and concluded that plaintiff was not disabled within the meaning of the Act. At step one, the ALJ found that plaintiff had not engaged in substantial gainful employment since March 23, 2006, the application date. (AT 12.) At step two, the ALJ concluded that plaintiff had the "severe" impairments of: "obesity, seizure disorder, hypertension, anemia, bone disorder, and back disorder." (Id.) At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in the applicable regulations. (Id.)

Prior to reaching step four of the analysis, the ALJ determined plaintiff's residual functional capacity ("RFC") as follows:

> [T]he claimant has . . . the ability to lift, push, and pull 10 pounds occasionally and 5 pounds frequently; the ability to walk, stand, stoop, and bend occasionally; the ability to sit frequently; the moderately limited ability to reach overhead; and the slightly limited ability to do simple, routine, repetitive tasks. The claimant has moderate to severe pain, requires only occasional supervision, and must take seizure precautions.

(AT 12.)

In assessing plaintiff's RFC, the ALJ addressed the medical evidence, giving "great weight" to the opinion of consultative examiner Dr. Sharma (AR 14) and giving

---

> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

"significant weight" to the opinion of state non-examining physician Dr. Desouza (Id.). Central to plaintiff's first assertion of error, the ALJ dismissed the opinions of plaintiff's treating physicians, Drs. Leon and Khambati. Specifically, the ALJ gave "little weight" to Dr. Leon's assessment of plaintiff's limitations, on the basis that "the limitations specific are extreme in light of the claimant's description of his daily activities and other opinion evidence." (AR 15.) As to Dr. Khambati's assessment of plaintiff's limitations, the ALJ stated: "While Dr. Khambati's assessment is certainly more realistic than Dr. Leon's, greater weight is accorded the consultative examiner's opinion which is more consistent with the treatment record and record of the claimant's daily activities." (Id.) Central to the plaintiff's second assertion of error, the ALJ also addressed plaintiff's testimony and found that plaintiff was not credible to the extent his testimony concerning the intensity, persistence and limiting effects of her symptoms conflicted with the ALJ's RFC assessment. (AT 13.)

Having assessed plaintiff's RFC, the ALJ found at step four that plaintiff is capable of performing past relevant work as a mobile home manager. (AT 15.) In addition, the ALJ found that "given his age, education, work experience, and [RFC]", there are jobs that exist in significant numbers in the national economy that the claimant can perform. (AT 15-16.) The ALJ relied on the vocational expert's testimony, and found that plaintiff could perform jobs such as cashier, dispatcher, and order clerk. (AT 16.) Based on plaintiff's ability to perform his past work and to perform jobs that exist in significant numbers in the national economy, the ALJ found that plaintiff is "not disabled." (Id.)

II. STANDARDS OF REVIEW

The court reviews the Commissioner's decision to determine whether it is (1) free of legal error, and (2) supported by substantial evidence in the record as a whole. Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009); accord Vernoff v. Astrue, 568 F.3d 1102, 1105 (9th Cir. 2009). This standard of review has been described as "highly deferential." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). "'Substantial evidence means

more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)); accord Valentine, 574 F.3d at 690. "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews, 53 F.3d at 1039; see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) ("[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."). Findings of fact that are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g); see also McCarthy v. Apfel, 221 F.3d 1119, 1125 (9th Cir. 2000). "Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's." Bray, 554 F.3d at 1222; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)). However, the court "must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Ryan, 528 F.3d at 1198 (quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); accord Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). "To determine whether substantial evidence supports the ALJ's decision, [a court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion." Andrews, 53 F.3d at 1039.

"If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990) (quoting Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)). "Where the Secretary is in a better position than this court to evaluate the evidence, remand is appropriate." Id. (citing McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989)).

///

III. DISCUSSION

A. The ALJ failed to provide specific and legitimate reasons for rejecting the medical opinions of plaintiff's treating physicians.

Plaintiff first claims that the ALJ erred by rejecting the treating opinions of Drs. Leon and Khambati in favor of the consultative examiner's opinion, which led the ALJ to erroneously conclude: (1) that plaintiff did not suffer nearly complete limitations in his ability to sit/stand/walk in a work setting; and (2) that plaintiff's limitation to doing routine simple tasks was only "slight." (Pl.'s Mot. for Summ. J. at 32-37.) Specifically, plaintiff argues that the ALJ failed to articulate specific and legitimate reasons for not crediting Drs. Leon's and Khambati's assessments of plaintiff's limitations. (Id.) For the reasons explained below, plaintiff's argument is well-taken.

Medical opinions of three types of medical sources are recognized in social security cases: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Generally, a treating physician's opinion should be accorded more weight than opinions of doctors who did not treat the claimant, and an examining physician's opinion is entitled to greater weight than a non-examining physician's opinion. Id. Where a treating or examining physician's opinion is uncontradicted by another doctor, the Commissioner must provide "clear and convincing" reasons for rejecting the treating physician's ultimate conclusions. Id.

Because the Social Security Administration ("SSA") favors the opinion of a treating physician over non-treating physicians, see 20 C.F.R. § 404.1527, if the treating or examining doctor's medical opinion is contradicted by another doctor, the Commissioner must provide "specific and legitimate" reasons for rejecting that medical opinion, and those reasons must be supported by substantial evidence in the record. Id. at 830-31; accord Valentine, 574 F.3d at 692. "'The ALJ can meet this burden by setting out a detailed and thorough summary of

the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" Tommasetti, 533 F.3d at 1041 (quoting Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). However, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." Orn v. Astrue, 495 F.3d 625 (9th Cir. 2007) (citing Embrey, 849 F.2d at 421-22). Moreover, "a finding that a treating source medical opinion . . . is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to 'controlling weight,' not that the opinion should be rejected." Id. at 631-32 (quoting Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *4 (July 2, 1996)). "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." SSR 96-2p, 1996 WL 374188, at *4.

1. Dr. Leon

Dr. Leon treated plaintiff from 2006-2007. (AT 452-55.) The ALJ gave "little weight" to Dr. Leon's medical opinion because:

> the limitations specified are extreme in light of the claimant's description of his daily activities. For example, meal preparation, laundry, and bathroom cleaning likely would involve at least some ability to maintain attention and concentration as well as some physical capacity to sit, stand, or walk.

(AT 15.)

Plaintiff testified that he prepares meals "maybe twice a day," washes dishes "maybe once a week," sweeps or vacuums "maybe once a month," helps with laundry "maybe once a week," cleans the bathroom "maybe twice a month," goes shopping for groceries once a month, makes his bed daily, changes the bedding once a month, and spends zero time a week at a computer. (AT 29-30.) Plaintiff further testified he spends up to fifteen hours a day in a recliner chair, either watching television or trying to sleep. (AT 31, 43-44.) Plaintiff testified that he does not go anywhere other than to the doctor approximately twice a month and does not a drive a vehicle because his license was revoked due to his seizures. (AT 32-33.)

Dr. Leon opined that, in a work setting, plaintiff could not lift, carry, stand, sit, or walk at all due to his severe osteoporosis with compression fractures. (AT 453.) Dr. Leon further opined that plaintiff would have a "poor"[4] ability to understand, remember, and carry out simple job instructions and detailed but not complex job instructions; and no ability to understand, remember and carry out complex job instructions. (AT 455–56.) Dr. Leon stated that, while plaintiff was compliant with his treatment, his response to treatment was "fair to poor." (AT 452.)

The sole reason the ALJ provided for rejecting Dr. Leon's medical opinion as to plaintiff's *work* limitations was the ALJ's view that the limitations conflicted with plaintiff's home activities. However, "[d]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (citing Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits)). See also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989) ("Many home activities are not easily transferable to ... the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."). The ALJ took a view that, based on plaintiff's daily activities, plaintiff should be able to stand or walk "occasionally" in a work setting. According to the Commission's regulations, "'Occasionally' means occurring from very little up to one-third of the time," but no more than 2 hours in an 8-hour work day. SSR 83-10. Plaintiff's testimony that he prepares meals "maybe twice daily," which includes warming food in the microwave, and makes his bed on a daily basis would indeed require that he stand or walk *some* small amount of the day, but such activities are not substantial evidence that plaintiff is able to stand or walk up to 2 hours a day in a work environment. Accordingly, this court finds that the

---

[4] On the Social Security Administration "Complete Medical Report of Physical and Mental Work-Related Impairments" form, which Drs. Leon and Khambati both completed regarding plaintiff, "poor" means "[a]bility to function in this area is seriously limited but not precluded. (See AT 581.) "Fair" means "[a]bility to function in this area is limited but satisfactory." (Id.)

ALJ's rejection of Dr. Leon's medical opinion was neither "specific and legitimate" nor "detailed and thorough."

2. Dr. Khambati

Dr. Khambati treated plaintiff throughout 2008. (AT 578.) Dr. Khambati opined that, in a work setting, plaintiff could lift and carry only up to 10 pounds occasionally and could stand, sit, or walk zero to one hours total in an 8-hour workday. (AT 579.) Regarding plaintiff's mental limitations, Dr. Khambati found a "poor" ability to deal with work stress, function independently, and maintain attention and concentration. (AT 581.) Dr. Khambati further assessed that plaintiff would have a "poor" ability to understand, remember, and carry out detailed but not complex job instructions and complex job instructions. (AT 582.) Unlike Dr. Leon, it was Dr. Khambati's opinion that plaintiff would have a "fair" ability to understand, remember and carry out simple job instructions. (Id.)

In rejecting Dr. Khambati's opinion, the ALJ summarized only the physical limitations Dr. Khambati placed on plaintiff and then stated: "While Dr. Khambati's assessment is certainly more realistic than Dr. Leon's, greater weight is accorded the consultative examiner's opinion which is more consistent with the treatment record and record of claimant's daily activities." (AT 15.) Not only did the ALJ fail completely to address the mental component of Dr. Khambati's opinion, the ALJ's basis for rejecting Dr. Khambati's opinion lacked the necessary specificity. Lester, 81 F.3d at 830. Had the ALJ accepted Dr. Khambati's opinion, the vocational expert testified plaintiff would be unable to perform any work. (AT 57–58.)[5]

This conclusion is not to say that the ALJ must accept Drs. Leon's or Khambati's opinion over that of the CE, but his failure to provide a sufficient basis for rejecting those treating physician opinions requires remand for further proceedings.

[5] The ALJ showed the Dr. Khambati's assessments to the VE and asked: "[F]rom a physical standpoint, there'd be no jobs?", to which the VE replied: "Right." Then, upon reviewing the mental portion of Dr. Khambati's assessment, the VE stated: "that's just not consistent with competitive employment." (AT 57–58.)

B. The ALJ's adverse credibility finding as to plaintiff's testimony is not supported by the record.

Plaintiff next claims that the ALJ erred by finding his testimony regarding his pain and functional limitations not to be credible, on factually inaccurate or legally insufficient bases. While the ALJ is responsible for determining credibility, the ALJ's findings must be supported by specific, cogent reasons. Reddick, 157 F.3d at 722 (9th Cir. 1998). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence. Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991) (en banc). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.3d at 834 (internal quotation marks omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id. Only if the level of plaintiff's activity was inconsistent with his claimed limitations would those activities have any bearing on his credibility.

Here, the ALJ's finding that plaintiff's activities indicate an ability to work is unsupported by the record. The ALJ found:

> [Claimant's] daily activities are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant has indicate that he can care for his own personal needs. At the hearing, the claimant testified that he prepared two meals a day, makes his bed daily, washes dishes once a week, does laundry once a week, and cleans the bathroom twice a month.

(AT 13.) As described in the previous section, Plaintiff testified to engaging in some daily life activities, such as preparing the occasional meal and making his bed, but that he spends up to fifteen waking hours a day resting. (AT 29-33, 43-44.) The activities plaintiff described to his doctors, on disability forms, and at his hearing, were fully consistent with his treating physicians' view that plaintiff was severely limited in his ability to sit/stand/walk in a work setting. His

activities were sporadic and punctuated with long periods of rest in a recliner chair. As discussed above in regards to the ALJ's rejection of plaintiff's treating physicians' medical opinions, plaintiff's home activities do not necessarily transfer to a work setting and the test for whether a claimant is disabled does not require the claimant to vegetate in a dark room and give up on attempts at engaging in normal life activities. Reddick, 157 F.3d 722.

The ALJ based his adverse credibility as to plaintiff on three other reasons, all of which are factually or legally insufficient. First, the ALJ found plaintiff not credible because plaintiff testified he was prescribed a wheelchair but the ALJ stated he did not find anything in the treatment record that support this claim. (AT 13.) This is simply incorrect. Although the record does not contain a copy of plaintiff's prescription for his wheelchair, there is a clear reference to plaintiff's wheelchair in a 2008 Sales, Service and Rental Agreement from Apria Healthcare which requested an exchange of foot rest on plaintiff's wheelchair. (AT 632.)

Second, the ALJ stated that "there does not appear to be any records" to support plaintiff's testimony that he has three seizures a month and has been hospitalized for four times in the last twelve months. (AT 13.) To the contrary, there are numerous documented hospitalizations in the record, including a three and half month inpatient stay when plaintiff was in a coma. (See AT 306-09; 514; 519-20; 535; 547-60; 566; 563; 573.) Moreover, aside from a single notation in July of 2006 that plaintiff's seizures were under "good control," all other notations reflected seizure activity, and the last entry in plaintiff's medical record reflected that plaintiff was experiencing three to five seizures a month lasting at least several minutes each with resultant confusion sometimes for approximately fifteen minutes. (AT 246; 267; 422; 486; 503; 584; 586; 588; 670.)

Lastly, the ALJ based his adverse credibility finding on plaintiff's "generally unpersuasive appearance and demeanor while testifying at the hearing." Because the ALJ's other three bases for finding plaintiff not credible are error, this final justification is legally insufficient on its own. See Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984); Morgan v. Apfel, 169

F.3d 595, 600 (9th Cir. 1999); Drouin v. Sullivan, 966 F.2d 1255, 1259 (9th Cir. 1992) (affirming ALJ where "the ALJ's personal observation was only one factor taken into consideration").

C. The ALJ relied on a hypothetical to the VE that did not encompass the limitations posed by plaintiff's treating physicians.

Plaintiff also claims the ALJ erred by failing to credit the testimony of the VE in response to hypothetical questions that reflected the functional limitations provided by Drs. Leon and Khambati. Because the court holds that the ALJ erred by rejecting the medical opinions of plaintiff's treating physicians without providing specific and legitimate reasons for so doing, and because the ALJ relied on a hypothetical RFC to the VE that did not encompass the limitation posed by plaintiff's treating physicians, on remand the ALJ will need to reassess the plaintiff's RFC and reconsider the VE's testimony or possibly obtain further VE testimony.

IV. CONCLUSION

By remanding this matter for further proceedings, the undersigned does not mean to suggest that the ultimate outcome should or should not be different. Instead, the matter is remanded because the ALJ's decision is legally deficient for the reasons set forth herein.

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 20) is granted;

2. Defendant's cross-motion for summary judgment (Dkt. No. 21) is denied; and

3. The Clerk is directed to enter a judgment in favor of plaintiff pursuant to sentence four of 28 U.S.C. § 405(g) and remand this matter to the Social Security Administration for further proceedings.

////

////

////

IT IS SO ORDERED.

DATED: July 23, 2012

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE